UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELYN HENDERSON,

   Plaintiff,        Case No. 04-73978

v.            District Judge Lawrence P. Zatkoff
             Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

  Plaintiff Evelyn Henderson brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income (SSI) benefits. Both parties have filed motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Plaintiff's motion for summary judgment be DENIED and that Defendant's motion for summary judgment be GRANTED.

### I. PROCEDURAL HISTORY

  This case involves the Plaintiff's third application for SSI benefits since 1997. Her first application, filed in April, 1997, was denied on August 7, 1998, following a hearing before Administrative Law Judge (ALJ) Melvyn Kalt (Tr. 27-33). Her second application, filed in December, 2000, was denied on May 8th, 2002, following a hearing before ALJ Alfred Varga (Tr. 76-84). Plaintiff filed the present claim for SSI benefits on July 25, 2002 (Tr. 98-100). Following initial denial of the claim on January 3, 2003, Plaintiff timely requested an administrative hearing, conducted on April 28, 2004 before ALJ Michael

Wilenkin in Oak Park, Michigan (Tr.242-55). Plaintiff, represented by attorney Kerry Spencer Johnson, testified at the hearing (Tr. 243-54). On July 30, 2004, ALJ Wilenkin, reviewing the evidence relied upon by ALJ Varga in his May, 2002 decision, along with new evidence submitted with the present application, found that there was no significant change in Plaintiff's residual functional capacity since ALJ Varga's decision, and therefore denied benefits, stating that "[Plaintiff] continues to be capable of performing the sedentary jobs as described by the vocational expert at the prior hearing" (Tr. 12).

On September 24, 2004, the Appeals Council denied review (Tr. 4-6). Plaintiff filed the present action in this Court on October 12, 2004, requesting judicial review of the final decision of the Commissioner.

## II.   FACTS

Plaintiff, born April 30, 1955, was 49 years old when the ALJ issued his decision. She has a high school education and some college. She claims a disability onset date of June 4, 1996 (Tr. 98). Prior to that time, she worked at various temporary jobs, ranging from stock work to customer service/telephone answering (Tr. 102-107). She alleges disability due to multiple conditions, including back, neck, leg and shoulder pain, headaches, and schizophrenia (Tr. 110).

### A.   The Prior ALJ's Decision

In his written decision of May 8, 2002, ALJ Varga found that Plaintiff had the severe impairments of discogenic and degenerative back disorders and an affective disorder, but that these impairments were not severe enough "to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4" (Tr. 80). He found that the Plaintiff had the Residual Functional Capacity (RFC) to perform:

> "A range of unskilled sedentary, entry level type work with the following restrictions, limitations and accommodations: lift 10 pounds occasionally and

lesser weights more frequently; sit or stand at her option, off and on, for six out of eight hours; job duties in front of her to avoid the need to turn her neck; no stair climbing; no heights, driving, climbing or work around hazardous machinery; simple and routine 1-2-3 step tasks; low stress; limited contact with the public, co-workers and supervisors." (Tr. 83).

ALJ Varga found that although Plaintiff could not perform her past relevant work, she had the RFC to perform "a significant range of sedentary work," and that there were a significant number of such jobs in the national economy, including "work as assembly, inspection, sorter, packager" (Tr. 83-84). There were, he said, 5,000 such jobs in the Southeast Michigan Region and 10,000 nationally (Tr. 84).

### B. Plaintiff's Testimony at the 4-28-04 Hearing

The Plaintiff testified before ALJ Wilenkin that she last worked in 1996 (Tr. 244). She said that she lives alone in a single-story unit, and that since she does not drive, her brother drove her to the hearing (Tr. 243). She stated that she has constant lower back pain except when she is lying down, and even then, certain positions are quite uncomfortable (Tr. 246). She testified that about a year before the hearing, she fell down the steps of a bus, resulting in a herniated disc (Tr. 247-48). Her medications include Vicodin, Flexeril and Elavil, the latter taken to help her sleep. She claimed that none of these drugs alleviates her constant neck pain, which she developed following a previous bus accident in 2001 (Tr. 248). This pain, she said, affects both sides of her neck and moves down her back (Tr. 250).

Plaintiff testified that her pain prevents her from taking baths, and that she can do no more than five minutes of housework. Although she used to sew and build furniture, she is no longer able to do those activities. She does not leave the house, she said, except to go to the store, and she does essentially nothing during the day (Tr. 252-53).

Plaintiff stated that she had been seen in the past at a psychiatric clinic by Dr. Rao, and obtained psychiatric medication from her primary care physician. However, she said that

"once I knew I was doing better...I stopped."  Changing the type of bed she slept on apparently helped.  She added that she currently had no problems (Tr. 253).

### C.    Medical Evidence

### 1.    Physical Problems

In 2001, Plaintiff was examined by Dr. George Domany, a neurosurgeon, for complaints of neck and shoulder pain following a bus accident.  Dr. Domany's notes of October 31, 2001 indicate that Plaintiff's cranial nerves were intact, with motor strength of 5/5.  He found normal and symmetrical deep tendon reflexes, noting that Plaintiff walked stiffly, but could ambulate without difficulty.  A CT scan of the cervical spine and x-rays of the lower, thoracic and lumbar spine were negative. Dr. Domany wrote that "[i]t appears to be [a] relatively normal study" (Tr. 171).[1]

The medical records contain a letter from Dr. Frank M. Fayz, a radiologist, addressed to the Plaintiff.  Dr. Fayz reviewed multiple MRIs, CT scans and x-rays taken between June 16, 2000 and February 5, 2002, which in his opinion showed only mild degenerative changes and mild degenerative disc disease (Tr. 204).  He found moderate disc bulges at L3 and L4, causing moderate L4 stenosis, but without true herniation (Tr. 204).

An emergency room discharge report from Sinai-Grace Hospital, dated August 11, 2002, indicates that the Plaintiff presented with complaints of back pain (Tr. 206).  She was found to have midline spinal tenderness in the mid- to upper and mid-thoracic areas, but x-

---

[1] Approximately three weeks earlier, on October 9, 2001, Dr. Franco Attanasio reviewed an MRI of Plaintiff's lumbar spine, offering his impression of mild spinal stenosis at L3-L4 and moderate spinal stenosis at L4-L5 (Tr. 172).  In terms of the cervical spine, radiologist I.S. Villarosa, M.D., stated in a November 19, 2001 report to Dr. Anattasio that he found no abnormality (Tr. 173).

rays were negative.[2] She appeared to be in no acute distress, and was given pain medication (Tr. 206-208).

On April 15, 2003, Dr. Lourdes Andaya performed a neurological examination of the Plaintiff based on complaints of neck and back pain following a fall in a bathtub on April 9, 2003 (Tr. 235). Dr. Andaya found the Plaintiff to be alert and oriented to time, place and person, adding, "Memory appears to be good for remote and recent events. Judgment and insight are both fair." (Tr. 235). Dr. Andaya found Plaintiff's tone, strength and bulk to be normal and symmetrical, with negative straight leg raising and "just some limitation of movement on hyperreflexia and hyperextension" (Tr. 236). She said that Plaintiff's gait was normal, and coordination was intact. She recommended MRI studies of the spine (Tr. 236).

On May 7, 2003, MRI studies were conducted of Plaintiff's cervical and lumbar spine (Tr. 233-34). The cervical spinal cord was found to be normal, and no compression fractures were identified (Tr. 233). The cervical MRI showed mild spondylosis from C4 to C7, including "posterior spurring and/or disc bulging," but "without effect on the spinal cord." The report noted "questionable mild neural foraminal narrowing on the left at C5-6," but "[n]o other disc displacement, spinal stenosis, or neural foraminal narrowing is identified" (Tr. 233).

The MRI of Plaintiff's lumbar spine confirmed degenerative disc disease at L3 to L5, with disc bulging, but without spinal stenosis (Tr. 233). Notwithstanding the disc bulging, there was no effect on the underlying nerve roots (Tr. 233-34).

On June 5, 2003, Plaintiff again presented to Dr. Andaya with complaints of chronic back and neck pain. Dr. Andaya found Plaintiff's mentation "[g]rossly within normal limits"

---

[2]The radiology report from that date stated, "Essentially negative examination. Minimal degenerative changes are seen in the lower dorsal spine" (Tr. 211).

(Tr. 231).  On motor examination, she found tone, strength and bulk normal and symmetrical, but noted Plaintiff's self-reported moderate limitation of movement of the neck due to pain. Dr. Andaya stated that Plaintiff's gait was normal, observing that she walked with crutches.  The doctor also noted that the Plaintiff was "not exerting enough effort" (Tr. 231).  Her clinical impression was cervical spondylosis with left side strain or radiculopathy (Tr. 231).

On April 20, 2004, approximately one week before the administrative hearing, Dr. Andaya completed a questionnaire provided by Plaintiff's attorney (Tr. 237-38).  She wrote that in terms of functional limitations, Plaintiff was unable to carry, push, lift or pull more than five pounds (Tr. 237).  In response to the question of whether the patient is "capable of performing a full-time job, that is, 8 hours per day, 5 days per week, on a sustained basis," Dr. Andaya wrote, "No, because of cervical and lumbar changes" (Tr. 238).

On November 6, 2002, a physical RFC evaluation was completed by a Disability Determination Services (DDS) doctor, who noted that a CT scan, an MRI and x-rays showed mild abnormalities and minimal degenerative changes in Plaintiff's spine, including the cervical spine at C2 to C7 (Tr. 146-47).  The doctor determined that Plaintiff could lift 10 pounds occasionally and one to five pounds frequently, and that she could stand for two hours and sit for six hours in an eight-hour workday (Tr. 146).

### 2.  **Mental Problems**

Dr. A. Kumar, M.D., a psychiatrist, prepared a report on November 13, 2002 for DDS (Tr. 213-15).  He noted that Plaintiff complained in 1994 of hearing voices which told her to kill herself, but that she had never attempted suicide.  She was never admitted to a psychiatric hospital, but was treated with Zyprexa, a psychotropic drug prescribed for symptoms of schizophrenia (Tr. 213).  He found that Plaintiff was in touch with reality, but

had poor self esteem.  She had good immediate, recent and past memory (Tr. 214).  Dr. Kumar diagnosed schizoaffective disorder, post-traumatic stress disorder and personality disorder.  He assigned Plaintiff a GAF of 42, noting that she was able to manage her own funds (Tr. 215).[3]

Dr. Gregory Berger, an assistant professor of medicine at the Wayne State University School of Medicine, saw the Plaintiff on January 16, 2003.  As to paranoid schizophrenia, he noted that the Plaintiff was out of Zyprexa, and he wrote a refill prescription.  He also noted that Plaintiff "is not hearing any voices at this time and I do not notice a large degree of paranoid ideation today" (Tr. 220).

On May 15, 2003, Dr. Berger again saw the Plaintiff, who reported that her symptoms of paranoid schizophrenia were under control.  Dr. Berger stated that "[t]here is a slight paranoid flavor to her ideation at this time, but no delusions or hallucinations are present" (Tr. 219).  He examined the Plaintiff again on October 16, 2003, noting that she "continues to have paranoid ideation and feels that people are out after her at her apartment" (Tr. 222).  The Plaintiff reported that she was not hearing any voices at this time (Tr. 222).

Dr. Zahra Khademian completed a Psychiatric Review Technique Form (PRTF) on behalf of DDS on December 9, 2002 (Tr. 163-67).  He found the Plaintiff to be moderately limited in social functioning, activities of daily living, and concentration, persistence and pace, with no episodes of decompensation (Tr. 163).  In terms of the Plaintiff's mental RFC, Dr. Khademian found the Plaintiff moderately limited in the ability to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods (Tr. 167).

---

[3]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )  (4th ed.2000).

As noted in the preceding section, in May and June, 2003, Dr. Andaya, Plaintiff's treating neurologist, found her mentation within normal limits, and her judgment and insight fair (Tr. 231, 235).

### D. The ALJ's Decision

ALJ Wilenkin adopted the prior findings of ALJ Varga, and also assessed subsequent evidence to determine whether there had been an appreciable change in her condition. He found that there had not (Tr. 12). He found the Plaintiff's severe impairments included degenerative disc disease and depression and/or schizophrenic disorder, but that the impairments did not meet or equal those found in the Listings (Tr. 12-13, 16). He found that Plaintiff had the RFC to perform a range of unskilled sedentary, entry-level work, with the same restrictions set forth in ALJ Varga's prior decision (Tr. 16). (ALJ Varga's RFC, set forth above, is found at Tr. 83). ALJ Wilenkin found that although Plaintiff could not perform her past relevant work, she would be able to perform a significant number of jobs in the national economy, including work as an assembler, inspector, sorter and packager (Tr. 17).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATION

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

### V.   ANALYSIS

At the outset, two observations are pertinent to this case. First, the Plaintiff is unrepresented by counsel. Accordingly, her *pro se* motion for summary judgment will not

-9-

be held to the standard of a practicing attorney, but will be given a liberal construction. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Secondly, as ALJ Wilenkin noted in his opinion (Tr. 12), the prior decision of ALJ Varga has the effect of *res judicata* in the present application. *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997). Thus, absent evidence of a significant deterioration in the Plaintiff's condition since May 8, 2002, "[the] subsequent ALJ is bound by the findings of [the] previous ALJ." *Id.* At 842.

That said, the Plaintiff's motion for summary judgment may be fairly read to encompass the following arguments: (1) the medical reports relied upon by the ALJ were false and misleading; (2) the ALJ erroneously discounted the Plaintiff's credibility; (3) the ALJ erroneously rejected Dr. Andaya's opinion that Plaintiff was incapable of work; (4) the ALJ's RFC finding was erroneous; and (5) the ALJ's decision denying SSI benefits was not supported by substantial evidence.

### A.   The Medical Reports

There are several problems with Plaintiff's argument that the various physician reports are false and misleading. First, this is not *de novo* review, and so long as an ALJ's credibility findings are supported by substantial evidence, this Court may not substitute its opinion of credibility for that of the ALJ, who is ceded enormous latitude. Secondly, many of the medical opinions to which Plaintiff objects come from her own treating physicians, which, under Social Security Regulations, are given deference, particularly where, as here, those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and...not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). *See also Allen v. Califano,* 613F.2d 139, 145 (6th Cir. 1980). All of the medical reports and objective clinical tests–both from treating and non-treating sources–are remarkably consistent with each other, an exceptionally strong indication of credibility and reliability.

While the Plaintiff's obvious frustration at the lack of clinical support for her discomfort is understandable, this Court cannot rule that the medical reports–including objective clinical tests–are false and misleading simply because they are inconsistent with her subjective complaints.

### B.    Plaintiff's Credibility

This is, in a sense, the corollary of the previous issue; the Plaintiff contends that her own testimony as to her level of impairment should prevail over the medical evidence. Instead, the ALJ stated that "[t]he claimant's testimony of various subjective complaints was not found to be credible" (Tr. 13, 16).

In determining the credibility of an individual's statements, it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. Social Security Ruling (SSR) 96-7p, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id.* These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994). Moreover, in reviewing the findings of the ALJ, the evidence must be reviewed as a totality, examining the record as a whole. *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir. 1985).

20 C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, precipitating and aggravating factors, treatment received for relief of symptoms, and additional considerations relevant to functional limitations. It is, of course, the Plaintiff who bears the burden of proof in substantiating her claimed limitations. *See Duncan v. Secretary,* 801 F.2d 847, 853 (6th Cir.1986); *McCormick v. Secretary of HHS,* 861 F.2d 998, 1002-1003 (6th Cir.1988). *See also, Hurst v. Secretary,* 753 F.2d 517, 519 (6th Cir.1985) (limitations must be substantiated by some objective, clinical or laboratory findings).

In the present case, the ALJ scrupulously evaluated Plaintiff's subjective complaints under the guidelines set forth in SSR 96-7p and 20 CFR 404.1529, and more than sufficiently supported his conclusion with evidence drawn from the record (Tr.13-16). He thoroughly discussed the imaging and radiographic studies of Plaintiff's lumbar and cervical spine, which for the most part were either negative or showed only minimal to mild degenerative changes, with no nerve root involvement (Tr. 13-14). He discussed the absence of any significant side effects of medication (Tr. 15). In terms of claimed mental impairments, the ALJ discussed not only the reports of Dr. Kumar and Dr. Berger, which indicated that the delusional aspect of the Plaintiff's schizophrenia (i.e., hearing voices) was under control, but the observations of Dr. Andaya that Plaintiff "was alert and oriented with grossly normal mentation and only cognitive deficits" (Tr. 15). Further, the ALJ "observed at the time of the hearing that the claimant had adequate concentration, memory, and responsiveness. She also showed no observable physical abnormalities." (Tr. 15).[4]

---

[4]Given the reports of Dr. Berger and Dr. Andaya (both treating physicians), as well as the Plaintiff's demeanor at the hearing, the ALJ could appropriately give diminished weight to Dr. Kumar's finding of a GAF of 42. In any event, the ALJ adequately accounted for Plaintiff's non-exertional limitations in his RFC. *See* sec. V-D, *infra*.

In short, the ALJ properly applied the criteria for assessing Plaintiff's credibility, and his conclusions were supported by substantial evidence.

### C.     Treating Physician Rule

In response to a questionnaire prepared for Plaintiff's attorney shortly before the administrative hearing, Dr. Andaya, the treating neurologist, stated that Plaintiff was incapable of full-time employment "because of cervical and lumbar changes" (Tr. 238). In addition, Dr. Andaya opined that Plaintiff could not sit or stand for any significant period (Tr. 237).

While as a general proposition the opinion of a treating physician is accorded deference, 20 C.F.R. §404.1527(d), the ALJ properly rejected this particular conclusion.

First, the issue of whether Plaintiff is unable to work is ultimately a decision for the Commissioner, not a doctor.  20 C.F.R. §404.1527(e)(1); *Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir. 1989)(the final decision on whether a claimant is disabled is a legal question, not a medical one).

Further, the ALJ hit the nail on the head when he stated that Dr. Andaya's assessment of the Plaintiff's functional limitations and ability to work "seems to be completely inconsistent with his [sic, her] own clinical and laboratory findings and the other reports of record" (Tr. 14).  As the ALJ observed, Dr. Andaya's treatment notes, as well as the MRI and radiographic studies, showed that Plaintiff had relatively mild degenerative spinal changes, normal gait and ambulation, good strength and coordination**,** and negative straight leg raising. Dr. Andaya's actual treatment notes are consistent with not only the objective tests**,** but with the emergency room evaluation of August 11, 2002, which showed negative x-rays, with some tenderness but no acute distress (Tr. 206-208), as well as the opinions of the DDS physician (Tr. 146-48).

Given the inconsistency between Dr. Andaya's conclusion as to disability and her and the other doctors' actual clinical findings, the ALJ did not err in rejecting that conclusion. *See King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984)(noting that the SSA is not bound by a treating physician's statements where the ALJ has identified inconsistencies).

### D.    The RFC Finding

RFC is a legal phrase that describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing Plaintiff's conditions as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

ALJ Wilenkin adopted the same RFC that ALJ Varga established in May, 2000. He did so based on his well-supported finding that the Plaintiff's condition had not appreciably worsened. The RFC generously accommodated the Plaintiff's exertional limitations by limiting her to sedentary work with a sit-stand option, and eliminating work which would require her to turn her neck. It addressed her mental limitations, including any paranoid ideation, by confining work to simple, low-stress jobs with "limited contact with the public, co-workers and supervisors" (Tr. 83). The RFC finding was fairly based on all of the relevant evidence the ALJ found credible. The Court finds no error.

### E.    Substantial Evidence

Again, virtually all of the clinical evidence, including treatment notes, x-rays and imaging studies conducted after May, 2002, show an individual who, despite some physical

-14-

problems and subjective complaints of pain, is able to do a range of sedentary work consistent with the RFC determined by the ALJ.  Indeed, since 1997, three ALJs have found, after a thorough review of the medical evidence, that there is work in the national economy that the Plaintiff can perform.  The overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. Based on a review of this record, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the

objections.

                                        S/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: January 5, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 5, 2006.

                                        S/Gina Wilson
                                        Judicial Assistant